**CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq. (SBN 227896)
sk@consumerlitigationlawcenter.com
Sholi Goodman, Esq., (SBN 287465)
sg@consumerlitigationlawcenter.com
100 North Citrus Street, Suite 408
West Covina, CA 91791
Telephone:  (800) 787-5616
Fax: (888) 909-7647

Attorney for Plaintiff, ALFREDO C. ARANDA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO C. ARANDA, an individual;<br><br>Plaintiff,<br><br>v.<br><br>CITIMORTGAGE, INC., a New York Corporation; U.S. BANK N.A., AKA, U.S. BANK TRUST N.A., AS TRUSTEE FOR VERICREST OPPORTUNITY LOAN TRUST ASSET HOLDINGS NPL3; VERICREST FINANCIAL, INC., a Delaware Corporation; SUMMIT MANAGEMENT COMPANY, LLC, a Delaware Limited Liability Company; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiff's title thereto, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 8:13-cv-00273-JVS-MLG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>Hearing Date:</u><br>Date:   August 12, 2013<br>Time:   1:30 p.m.<br>Ctrm:   10C<br><br>Judge: Honorable James V. Selna |

1

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

Plaintiff, ALFREDO C. ARANDA, herein submits his Opposition to Defendant, CITIMORTGAGE, INC.'S, ("CITI") Motion to Dismiss his Second Amended Complaint ("SAC.") Plaintiff opposes Defendant's Motion to Dismiss on the grounds that his SAC does state valid causes of action and that Defendant's Motion to Dismiss is without merit.

The Opposition shall be based on this Opposition, the attached Memorandum of Points and Authorities, on the complete files and records of this action, and on such other oral and/or documentary evidence as may be presented at the hearing on the Motion.

Dated: July 22, 2013                    CONSUMER LITIGATION LAW
                                        CENTER, APC


                                        BY:  ___/s/ Sholi Goodman_____
                                            September J. Katje, Esq.
                                            Sholi Goodman, Esq.
                                            Attorney for Plaintiff,
                                            ALFREDO C. ARANDA

# Memorandum of Points and Authorities

## I. INTRODUCTION

On June 3, 2013, Plaintiff filed a Second Amended Complaint ("SAC") containing factual allegations against Defendant CitiMortgage ("CITI") sufficient to support denying Defendants Motion to Dismiss in its entirety. Plaintiff carefully considered every allegation in Defendant's original motion and this court's ruling thereafter in filing their SAC, but Defendant CITI has again filed a Motion to Dismiss in this matter.

## II. STATEMENT OF FACTS

Plaintiff is the owner of the real property located at 22421 Gravino, Laguna Hills, CA 92653 ("Subject Property"). (SAC ¶ 3.) On September 30, 2005, Plaintiff obtained a mortgage loan in the amount of $512,000.00, secured by a deed of trust.

CITI is part of, and bound by, a National Class Action Settlement Agreement ("Settlement Agreement") whereby it is required to follow specific steps to remedy the plethora of fraudulent or otherwise wrongful loans that were a substantial cause of the recent financial crisis. (The Terms of the Settlement Agreement, as summarized below, can be found in the Exhibit "A" to the Settlement Agreement entitled "Settlement Term Sheet".) One of the Settlement Agreement's requirements is that borrowers be reviewed for a HAMP loan modification if eligible. (SAC ¶ 49.) Although CITI was, nor is, required to give every borrower a permanent loan modification, according the Settlement Agreement, they must be reviewed for, among others, a HAMP loan modification. (SAC ¶ 50.)

The HAMP guidelines require that if a borrower is given a trial loan modification and makes all three payments timely under the trial plan, as well as supplies all the requested documents, he must be offered a permanent loan modification. (SAC ¶ 51.) Thus, once a borrower is reviewed and found eligible

for a trial HAMP loan modification, if the borrower makes timely payments and documentary responses – CITI has a duty to give the borrower a permanent loan modification. (SAC ¶ 52.)

Plaintiff began contacting CITI, the holder and effective servicer of Plaintiff's loan note at that time, in late 2010, to inquire about loan workout options, particularly a loan modification. (SAC ¶ 16.) CITI advised Plaintiff to submit a loan modification application and all the required documents. *Id.* Plaintiff submitted the documents and was approved for a trial modification plan. *Id*.

CITI's agent that was handling Plaintiff's approved loan modification request told Plaintiff that if he complied with the trial modification requirements he would get a permanent loan modification, as he had been requesting. Accordingly, Plaintiff made three payments under the terms of the trial modification in compliance with the modification offer. (SAC ¶ 54.)

Plaintiff had been reviewed, found eligible, and given a trial loan modification, however CITI never provided Plaintiff with a permanent loan modification. (SAC ¶ 18.) Instead CITI claimed that the only reason why Plaintiff was being denied a permanent loan modification was because Plaintiff had allegedly never signed or returned the modification agreement. (SAC ¶ 17.) In fact, Plaintiff never received any such loan modification documents. (SAC ¶ 18.) Further, Plaintiff is informed and believes that all contact had occurred over the phone and he categorically never received any permanent loan modification documentation or attempts by Defendant to facilitate as much. (SAC ¶ 19.)

Had Plaintiff received permanent loan modification documents from CITI, Plaintiff would have accepted the loan modification agreement and signed the required documents and returned them to CITI. (SAC ¶ 18.) CITI was negligent in proceeding to process Plaintiff's loan modification application, in informing Plaintiff he would receive a permanent loan modification if he made all three trial payments, thereinafter failing to provide Plaintiff a permanent loan modification

4

after Plaintiff made all trial payments under the terms of the loan modification, and erroneously and blindly denying Plaintiff for the promised permanent loan modification based on a failure to fill out documentation that Defendant itself was the sole cause of failing to supply. *Id.*

Plaintiff was not denied for any substantive reason other than for failing to sign documents he was never supplied with. (SAC ¶ 18.) It can thus be inferred that Plaintiff was otherwise eligible for, and would have received, the promised permanent loan modification, the conditions of which he had dutifully and timely fulfilled, absent Defendant CITI's failure or otherwise mishandling of Plaintiffs loan modification documents.

### III.   LEGAL STANDARD

Rule 12(b)(6) motions are viewed with disfavor, and accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). The standard for dismissal under Rule 12(b)(6) is a stringent one. "[A] complaint should not be dismissed for failure to state a claim unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (emphasis added). The purpose of a Federal Rule 12(b)(6) motion is to test the formal sufficiency of the statement of the claim for relief in the complaint. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

The complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). It is not a procedure for resolving a contest about the facts or the merits of the case. In reviewing the sufficiency of the complaint, the issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to

offer evidence to support the claims asserted. Furthermore, more recently, the U.S. Supreme Court has held that to survive a motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, would "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 55 US 544, 547 (2007).

## IV.   ARGUMENT

First, Defendant never claims, and the denial letter confirms, that Plaintiff was not denied for any reason other than for failing to fill out and sign the permanent loan modification documents. Plaintiff has alleged that he never received these documents and thus could never have signed them. (SAC ¶ 57.) Defendant has never alleged in any pleading or other document that it actually ever sent Plaintiff these precise documents. Defendant certainly has not referred to or presented any evidence of such. In fact, Plaintiff has alleged, and Defendants have not denied, that all communications regarding the loan modification process, temporary or permanent, were conducted telephonically. Thus, it can reasonably be concluded that Defendant never did in fact send any permanent loan modification documents to Plaintiff.

Further, if Plaintiff was only denied, albeit erroneously, for failure to provide the necessary documentation, then it can be inferred that he otherwise qualified absent this procedural nuance. Had Plaintiff been ineligible for investor non-participation or financial insufficiency or excess, Defendant would have and could have said as much. In fact, if Plaintiff had not otherwise qualified substantively, then what permanent loan modification application would need to have been signed? The signing is the acceptance of the agreement. Thus, Defendant's denial shows that Plaintiff was otherwise fully eligible and qualified for the permanent loan modification.

## A. PLAINTIFF HAS STATED A CLAIM FOR UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTIONS 17200, ET SEQ.

Unfair Competition Law ("UCL") defines "unfair competition" to include "any unlawful, unfair, or fraudulent business act or practices" that "threatens an incipient violation of an antitrust law, or **violates the policy or spirit** of one of those laws because…(it) **significantly threatens or harms competition**." *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180.

### 1. Plaintiff Has Sufficiently Pled That Defendants' Actions Were Unfair

"[A]n unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to the consumer." *People v. Casa Blanca Convalescent Homes Inc.* (1984) Cal.App.3d 509, 530. Section 5 of the Federal Trade Commission Act prohibits "unfair methods of competition in commerce." *See* 15 U.S.C. § 43(a).

As set out above, CITI and at least four (4) other major financial institutions were bound by the Settlement Agreement. (The Terms of the Settlement Agreement, as summarized below, can be found in the Exhibit "A" to the Settlement Agreement entitled "Settlement Term Sheet".) Pursuant to the Settlement Agreement, all five (5) signatories – including CITI - are required to follow specific steps to remedy the plethora of fraudulent or otherwise wrongful loans that were a substantial cause of the recent financial crisis and to promote the public policy of avoiding foreclosures that has devastated the economy. (*See e.g.*; the recently enacted: Protecting Tenants at Foreclosure Act; California's Homeowners Bill of Rights; and the Dodd-Frank Bill.)

The Settlement Agreement expressly requires that borrowers be reviewed for a HAMP loan modification, if eligible. Although CITI was not, nor is,

required to *give* every borrower a permanent loan modification, according to the Settlement Agreement, ***they must be reviewed*** for, among others, a HAMP loan modification. Further, since 2010 HAMP guidelines require that if a borrower is given a trial loan modification and makes all three payments timely under the trial plan, as well as supplies all the requested documents, he ***must*** be offered a permanent loan modification. Thus, once a borrower is reviewed and found eligible for a trial HAMP loan modification, if the borrower makes timely payments and documentary responses – CITI is required to give the borrower a permanent loan modification.

It is undisputed that Plaintiff was reviewed, found eligible, and given a trial loan modification, and that Plaintiff timely made all three trial payments as instructed, and required by HAMP guidelines, in order to receive a permanent loan modification. Plaintiff also timely supplied all requested documents. However, CITI unfairly failed to send Plaintiff a permanent loan modification agreement for Plaintiff to sign, as promised and required by the Settlement Agreement and HAMP guidelines.

CITI never requested that Plaintiff return any, allegedly sent, permanent loan modification agreement. Had CITI sent the agreement to be signed, Plaintiff would have immediately signed and returned the agreement. Had CITI requested Plaintiff to sign and return a permanent loan modification agreement, Plaintiff would have immediately notified CITI that he had not received one and immediately request another one to be sent for him to sign.

Further, Plaintiff believes and thereon alleges that CITI has and does engage in this unfair, and other deceptive conduct, not just against Plaintiff, but against the public at large. By violating the Settlement Agreement while the other four (4) major banking institutions that make up the substantial majority of mortgage sources in the United States, are abiding by the Settlement Agreement,

CITI has gained a substantial competitive advantage over the other banking institutions.

Not giving permanent loan modifications is inherently profitable because it allows for CITI to not only continue to wrongfully charge late fees, foreclosure fees, and other costs associated with default, but it also allows CITI to foreclose on properties, the securing notes of which were purchased at the nadir of the financial crisis at pennies on the dollar, and then resell at monumental profits at the height of the real estate market recovery. CITI is able to thus maximize at every angle, to the detriment of the public at large, and with an incredible competitive edge over the rest of the major banks bound by the Settlement Agreement who cannot usuriously profiteer because they are abiding by the Settlement Agreement and giving borrowers, such as Plaintiff, their rightful permanent loan modifications instead of unfairly foreclosing to the detriment of the other signatories and fair competition as a whole.

CITI's acts are "unfair" because they clearly violate the Settlement Agreement and competition laws, "offends the published public policy of avoiding foreclosures in the wake of the current foreclosure crisis (*See e.g.;* the recently enacted: Protecting Tenants at Foreclosure Act; California's Homeowners Bill of Rights; and the Dodd-Frank Bill.), and is without doubt "immoral, unethical, oppressive…and substantially injurious to consumers."

To support a claim for Unfair Competition, the FTC requires the consumer injury to be substantial, the complained-of-practice must not be outweighed by any countervailing benefits to consumers or competition, or the injury must be one that consumers themselves could not have reasonably avoided. See *Am. Fin. Serv. Ass'n v. F.T.C.* (D.C. Cir. 1985) 767 F.2d 957, 971.

CITI's conduct in loan modification practices gave Defendant an unfair competitive advantage over its competitors that did not engage in such practices. (FAC ¶ 67.) Further, there is no greater injury than the loss of ones home, and

certainly the devastation that the foreclosure epidemic has had on the entire economy. The legislative response to the epidemic is evidence enough of the horrific impact. (*See e.g*.; the recently enacted: Protecting Tenants at Foreclosure Act; California's Homeowners Bill of Rights; and the Dodd-Frank Bill.) Defendant intended that Plaintiff would be misled. *Id.* The harm to Plaintiff outweighs any utility that Defendant's acts might have, albeit Plaintiffs cannot think of any legitimate benefits he, society or the economy could gain by directly violating a promise, the Settlement Agreement, intended to do exactly the opposite of CITI's conduct. *Id.*

Plaintiff has also been harmed by CITI's unfair conduct, in the form of pecuniary damages to his credit, late fees, interest and other costs associated with the wrongful denial of his promised permanent loan modification, and the wrongful foreclosure proceedings that have begun against his property. (SAC ¶¶ 22, 23)  In addition, substantial additional fees, penalties and interest have continued to accrue on his account since he should have obtained the permanent loan modification on his loan from CITI. (SAC ¶¶ 76, 77)  But for CITI's failure to provide Plaintiff a permanent loan modification after Plaintiff's compliance with all of the terms of the temporary loan modification and CITI's promise to do so after Plaintiff's compliance, Plaintiff would not have accumulated the additional penalties, interest and fees since his permanent loan modification would have taken effect, in or around early 2011.

Therefore, Plaintiff stated that Defendants' actions were unlawful and unfair and thus a violation of California *Business and Professions Code* §§ 17200, et seq. and Defendant's Motion to Dismiss should be denied.

### B. PLAINTIFF IS NOT REQUIRED TO TENDER

A mortgagor who seeks to set aside a voidable sale must make a valid tender of payment of indebtedness. *Karlsen v. American Savings & Loan Assn.,*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

15 Cal. App. 3d 112, 117 (1971). Thereby, Defendant contends that Plaintiff is required to provide tender, allege that Plaintiff is incapable of performing tender, and thus the entire FAC is barred by the tender rule. However, there are recognized exceptions to the tender requirement. As to CITI, Plaintiff does not seek to rescind the loan documentation, but rather he seeks damages for the harms perpetrated against him by CITI in the modification process as set forth above. Thus, Plaintiff's causes of action specifically do not require tender and Plaintiff should not be required to allege tender.

### C.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss, set a date in which Defendant must answer the SAC, and further set this case for trial.  In the alternative, Plaintiff requests the Court allow him sufficient time to amend his complaint to allege additional facts sufficient to plead inadequately pled causes of action against Defendant.

Dated:  July 22, 2013               CONSUMER LITIGATION LAW CENTER, APC


                                    BY ___*/s/ Sholi Goodman*_____
                                        September J. Katje, Esq.
                                        Sholi Goodman, Esq.
                                        Attorney for Plaintiff,
                                        ALFREDO C. ARANDA

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**